24-945-cv
*Woods v. Comm'r Soc. Sec.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of March, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

_____

ANTHONY WOODS,

> *Plaintiff-Appellant,*

v.                                                             24-945-cv

COMMISSIONER OF SOCIAL SECURITY,

> *Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:          Howard D. Olinsky, Caeden Sehested, and Julie Atkins, Olinsky Law Group, Syracuse, New York.

FOR DEFENDANT-APPELLEE:          NATASHA OELTJEN, Special Assistant United States Attorney (Suzanne M. Haynes, Acting Associate General Counsel, Office of Program Litigation, Social Security Administration, *on the brief*), *for* Matthew Podolsky, Acting United States Attorney for

the Southern District of New York, New York, New York.

Appeal from the judgment of the United States District Court for the Southern District of New York (Gary R. Jones, *Magistrate Judge*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on March 11, 2024, is **AFFIRMED**.

Plaintiff-Appellant Anthony Woods appeals from the district court's judgment affirming the Commissioner of Social Security's denial of his application for disability insurance benefits. In determining that the decision of the administrative law judge ("ALJ") was supported by substantial evidence, the district court found that the ALJ properly considered Woods's subjective statements regarding the symptoms of the conditions that allegedly rendered him disabled and properly evaluated the medical opinion evidence in the record. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

When reviewing the denial of disability benefits, "we focus on the administrative ruling rather than the district court's opinion" and "conduct a plenary review of the administrative record." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "[W]e review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (internal quotation marks and citation omitted). In this context, substantial evidence is "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind

---

[1] The parties consented in April 2023 that all proceedings in this case would be conducted before the magistrate judge.

2

might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam).

## I. Woods's Subjective Statements

Woods first argues that the ALJ failed to properly evaluate his subjective statements concerning his condition because the ALJ's decision did not provide specific reasons why Woods's allegations were inconsistent with the record. Woods contends that, instead, the ALJ made this finding in a conclusory manner, in contravention of social security regulations, by explaining only that Woods's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Appellant's Br. at 24 (quoting Administrative Record at 783). We disagree.

Although an ALJ must "take the claimant's reports of pain and other limitations into account," the ALJ "is not required to accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam); *see also* 20 C.F.R. § 404.1529(c)(4) (requiring ALJ to consider "the extent to which there are any conflicts between [subjective statements regarding symptoms] and the rest of the evidence"). When assessing a claimant's testimony, "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (internal quotation marks and citation omitted).

The record here demonstrates that the ALJ sufficiently explained how Woods's testimony was inconsistent with medical evidence and other evidence in the record, including his own prior

3

statements.  At a hearing in August 2022, Woods testified that he suffers from severe back pain from a herniated disk, which radiates down his legs, as well as sharp pain and stiffness in his neck. This pain purportedly causes him to have trouble bending over, and has resulted in severe sleep issues.  He also testified that he experiences ankle pain and inflammation due to a torn ligament. Woods stated that these symptoms limit him to walking only a half to a full city block, standing for 30 to 40 minutes at a time, and sitting for 25 to 30 minutes at a time.  In addition to his back, neck, and ankle problems, Woods also testified that he suffers from chronic pain in his hands, which prevents him from carrying objects heavier than eight to ten pounds.  Woods testified that, in light of his pain, his household chores must be conducted slowly and with caution, and he must make multiple, short trips to the grocery store.

In assessing Woods's testimony, the ALJ noted that, in 2018, Woods represented that he could sit for up to 90 minutes and go shopping for 25 minutes to an hour multiple times a week. The ALJ further observed that, in March 2022, Woods stated that he was experiencing low levels of pain and could walk a mile, stand without limitation, and sit for an hour at a time.  The record also reflects that Woods told Alexander Pennise, a physician's assistant ("PA"), that "he is generally active and walks and dances."  Administrative Record at 1079.  As for the medical evidence, the ALJ pointed to numerous opinions from Woods's treating physicians that were inconsistent with his August 2022 testimony.  For example, Dr. S. Putcha determined that Woods was capable of lightly exerting himself.  Dr. Michael Healy concluded that Woods presented only mild postural and exertional limitations and, similarly, Dr. Sharon Revan found that Woods was only mildly to moderately limited in sitting, standing, or walking.  The ALJ further noted that Dr. Ranga Krishna recorded that Woods was participating in a "back-to-work" program five days a week.  Finally,

4

Drs. William Walsh and Ari Lerner both observed improvements in Woods's condition, with Dr. Lerner recording, in 2021, that Woods had returned to work.

Woods argues that the ALJ's explanation is insufficient because she did not identify which pieces of evidence rendered any one of Woods's allegations inconsistent with the record. That argument is plainly contradicted by the record and is without merit. For instance, the ALJ noted that the record contained representations from Woods that he could sit, stand, and walk for longer periods of time than he claimed at his hearing. Further, the medical opinions referenced by the ALJ concluded that Woods suffered from only mild to moderate limitations and that his condition had improved to the point that he had returned to work. This explanation is sufficient for us to understand how the ALJ determined that Woods's testimony was inconsistent with substantial evidence in the record. *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (explaining that an ALJ's conclusions "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence"). In sum, we conclude that the ALJ committed no error in her evaluation of Woods's subjective statements concerning his condition, and substantial evidence in the record supports this evaluation.

## II. Medical Opinion Evidence

Woods next argues that the ALJ erred by failing to properly evaluate the medical evidence in the record because the ALJ did not sufficiently explain why she considered certain treating physicians' opinions persuasive. Specifically, Woods contends that the ALJ should have explained how each medical opinion was supported by or consistent with the record. We disagree.

In assessing medical opinion evidence, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider five factors, the most important of which are supportability and consistency. *Id.*; *see id.* § 404.1520c(c)(1)–(5). Supportability refers to how "the objective medical evidence and supporting explanations presented by a medical source . . . support [the medical source's] opinion(s) or prior administrative medical finding(s)." *Id.* § 404.1520c(c)(1). Consistency refers to how similar "a medical opinion(s) or prior administrative medical finding(s) is with the evidence" in the record. *Id.* § 404.1520c(c)(2). The ALJ must explain how she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [her] determination or decision." *Id*. § 404.1520c(b)(2).

Based upon a review of the record, we discern no error in the ALJ's explanation or findings with respect to the supportability and consistency of the medical opinion evidence. We begin with the medical opinions that the ALJ found persuasive. Dr. Putcha determined that Woods could do light work, lift between 10 to 20 pounds, and stand, walk, or sit for six hours in an eight-hour workday, and concluded that, based on these findings, Woods was capable of light exertion. Drs. Healy and Revan made similar findings. Dr. Healy observed that Woods had mild limitations with sitting, standing, walking, climbing stairs, bending, and lifting. Along these same lines, Dr. Revan concluded that, given his range of motion, Woods was mildly to moderately limited in his ability to sit, stand, or walk. Moreover, consistent with the findings of Drs. Putcha, Healy, and Revan, Dr. Walsh observed that Woods's back condition had improved such that Woods could return to work, while Dr. Lerner reached a similar conclusion, after observing that Woods knew not to engage in activities, such as excessive bending, twisting, or carrying heavy objects, that would exacerbate his pain. This medical evidence is consistent with Woods's own representations that,

6

as explained above, he could walk a mile, stand without limitations, sit for an hour, and was "generally active." Administrative Record at 1079; *see* 20 C.F.R. § 404.1529(c)(3)(i) (explaining that an ALJ may consider daily activities in evaluating the consistency of allegations of disability with the record as a whole); *Schillo*, 31 F.4th at 77 n.4 (explaining that it is proper to consider a claimant's daily activities in assessing whether medical opinion evidence was consistent with the record).

Turning to the medical evidence that the ALJ determined was unpersuasive, Dr. Krishna concluded that Woods could only perform less than sedentary work. However, the ALJ explained that this conclusion was inconsistent with Dr. Krishna's other findings that Woods was participating in a back-to-work program and did not need any assistance devices. The ALJ further explained that Dr. Krishna's conclusion regarding Woods's ability to work was inconsistent with other medical evidence in the record, such as the conclusions of Dr. Healy and Dr. Walsh, who stated, respectively, that Woods experienced mild limitations and that Woods could return to work. As for PA Pennise, the ALJ discounted his conclusion that Woods's condition prevented him from sitting for more than five hours and standing for more than 30 minutes because PA Pennise's own notes did not provide an explanation for this conclusion and the conclusion was inconsistent with his own report at the time of the assessment. Finally, regarding Dr. Xenos, the ALJ explained that his opinion that Woods could not sit or stand for more than 15 minutes was inconsistent with Dr. Walsh's opinion that Woods's condition had significantly improved.

Woods argues that this evaluation of the medical opinion evidence was improper because the ALJ's explanation of why certain opinions were credited, while others were not, was conclusory and ignored certain evidence in the record. We are unpersuaded. As an initial matter, the ALJ's

7

decision provides more than a conclusory explanation for her medical opinion determinations. Indeed, as explained above, the ALJ's decision describes the extent to which each medical opinion was supported by objective evidence in the record and was consistent with other medical sources, and, based on an assessment of those factors, explains how much weight each opinion was afforded.

Moreover, Woods's contention that the ALJ's decision did not discuss certain evidence is similarly unavailing. We have previously held that "an ALJ is not required to discuss every piece of evidence submitted," and a "failure to cite specific evidence does not indicate that such evidence was not considered," *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam), so long as the ALJ's decision allows us to conduct a meaningful review of the decision, *see Cichocki*, 729 F.3d at 177–78. Here, the ALJ's decision was sufficient for us to determine that her medical opinion determinations were based upon substantial evidence. The ALJ's decision provided a rationale for why a medical source's opinion would be credited, identified inconsistencies among certain medical source opinions, and furnished citations to the record supporting her findings. Thus, we find no error in the ALJ's explanation regarding the supportability and consistency of medical opinion evidence in the record, and further conclude that substantial evidence supports the ALJ's determination.

\*　　　　　　\*　　　　　　\*

We have reviewed Woods's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court